[Cite as *In re S.H.*, 2015-Ohio-269.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

BUTLER/HAIRSTON CHILDREN

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 2014CA00148

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2013 JCV 00135 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 20, 2015 |
| APPEARANCES: | |

| | |
|---|---|
| For Appellant | For Appellee |
| MARK OSTROWSKI | LISA A. LOUY |
| Stark County Public Defenders Office | Stark County DJFS |
| 201 Cleveland Avenue S.W., Suite 104 | 300 Market Avenue North |
| Canton, Ohio 44702 | Canton, Ohio 44708 |

*Hoffman, P.J.*

{¶1} Appellant Mairion Hairston ("Father") appeals the July 14, 2014 Judgment Entry entered by the Stark County Court of Common Pleas, Family Court Division, which terminated his parental rights, privileges, and responsibilities with respect to his minor child and granted permanent custody of the child to appellee Stark County Department of Job and Family Services ("SCDJFS").

STATEMENT OF THE CASE AND FACTS

{¶2} On February 11, 2013, SCDJFS filed a complaint, alleging S.H. (dob 11/29/04) and five siblings were dependent and neglected children and seeking temporary custody of them.[1] Father is the biological father of S.H. The trial court conducted an emergency shelter care hearing on the same day and awarded emergency temporary custody of the children to SCDJFS.

{¶3} On March 6, 2013, Father stipulated to a finding of dependency for the children. SCDJFS agreed to delete the allegations of neglect. Father agreed to the award of temporary custody of the children to SCDJFS as well as to the approval and adoption of the case plan. Following a review hearing on July 30, 2013, the trial court maintained the status quo.

{¶4} SCDJFS filed a motion to change legal custody of two of the siblings, M.H. and Da.H., to Father on December 11, 2013. At the second review hearing on January 3, 2014, the trial court set the matter for evidentiary hearing on the motion for change of

---

[1] This Appeal only involves S.H.; therefore, we shall only include facts relative to S.H. unless necessary to do otherwise.

legal custody with respect to M.H. and Da.H., and maintained the status quo with respect to S.H.

{¶5} On January 6, 2014, SCDJFS filed a motion to extend temporary custody of S.H. to August 8, 2014. The same day, SCDJFS filed a motion for permanent custody of two different siblings, T.H. and Se.H. SCDJFS subsequently sought to amend the motion for permanent custody to include S.H. The trial court scheduled a hearing for April 28, 2014. Father filed a motion for extension of temporary custody on April 21, 2014.

{¶6} For a number of reasons, the April 28, 2014 hearing was continued. However, on that day, the trial court appointed counsel for S.H. Counsel for S.H. filed a motion for extension of temporary custody on June 9, 2014. The trial court conducted a hearing on SCDJFS's motion for permanent custody as well as Father's and S.H.'s motions for extension of temporary custody on July 9, 2014.

{¶7} The testimony adduced at the hearing revealed Father had failed to satisfactorily complete his case plan. The case plan required Father to undergo a drug and alcohol assessment and follow all recommendations; complete a parenting evaluation and follow all recommendations; maintain stable housing and employment; complete anger management classes; attend Goodwill parenting; and submit to random drug screens.

{¶8} Father completed the drug and alcohol assessment and followed through with treatment recommendations early in the case. He submitted negative drug screens until May, 2014, after which he tested positive for marijuana on three occasions.

{¶9} Father completed his parenting evaluation. The evaluator recommended Father complete Goodwill parenting classes; engage in the Goodwill home-based parenting education program should he be given custody; undergo drug treatment; maintain sobriety; undergo anger management treatment; secure gainful employment; participate in joint counseling with the children; and participate with family mental health services.

{¶10} Although Father engaged in the services offered through Goodwill, the Goodwill instructor, who worked with the family, testified Father did not successfully complete his program goals. The instructor spent most of her time mentoring Father on meeting the basic needs of S.H. and her siblings. The instruction included maintaining housing and working utilities. Father did not maintain stable housing and faced eviction during the proceedings. He struggled to keep the electricity on in the home.

{¶11} Father did not complete anger management. Father did not have gainful employment during the case. He was receiving government assistance, but only had a few months of eligibility left of such assistance. Father acknowledged his lack of a high school diploma or GED was probably holding him back from gaining employment. Nonetheless, despite being given information at the commencement of the case, he had failed to take any steps toward completing this goal. Father claimed he would obtain his GED if given the six month extension.

{¶12} In addition to two of S.H.'s siblings whom SCDJFS had placed with him, Father resided with his girlfriend, her child from a previous relationship, and the child they have together. The girlfriend's child has significant behavior issues which required

psychiatric intervention. The girlfriend was in treatment for drug issues. Further, Father had not had any contact with S.H. since December, 2013.

{¶13} Cheri Smith, the SCDJFS caseworker assigned to the family, testified S.H. is a nine year old, bi-racial child. S.H. has been diagnosed with reactive attachment disorder, oppositional defiant disorder, attention deficit disorder, post traumatic stress disorder, and possibly a general anxiety disorder. S.H. was initially placed with a relative, but the relative was unable to maintain long-term placement. No other family members were willing or appropriate to take custody of S.H. The girl had been the victim of sexual abuse and had sexually perpetrated against another child while in a prior foster home. The caseworker testified any harm to S.H. caused by the termination of parental rights would be outweighed by the benefits to her from adoption and permanency.

{¶14} Gail Mager, S.H.'s counselor, testified she had seen the girl for 18 sessions over a six month period. Mager diagnosed S.H. with reactive attachment disorder and ADHD. The counselor stated S.H. is a child who manipulates, lies, and steals. In addition, S.H. is not well socialized and does not interact well with others. S.H. has little respect for adults, and views people as object to manipulate to obtain what she wants. Mager believes S.H. will likely need long term mental health intervention and would be better in a single child home. Mager stated individuals can be trained to appropriately deal with S.H.'s issues, however, Mager did not think Father would be a good candidate for such training. As Mager explained S.H. had "developed these issues because of how she has been parented in her life." Father never asked to be included in S.H.'s mental health treatment. Mager acknowledged S.H. misses Father

and is disappointed by his lack of contact. However, Mager did not feel S.H. was capable of making an intelligent decision as to her placement.

{¶15} Via Judgment Entry filed July 14, 2014, the trial court terminated Father's parental rights, privileges, and responsibilities, and granted permanent custody of S.H. to SCDJFS. The trial court found S.H. cannot and should not be placed with Father within a reasonable time, and it was in the girl's best interest to grant permanent custody to SCDJFS.

{¶16} It is from this judgment entry Father appeals, assigning as error:

{¶17} "I. THE COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A SIX MONTH EXTENSION.

{¶18} "II. THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY WAS IN S.H.'S BEST INTEREST WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶19} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

II

{¶20} For ease of discussion, we shall address Father's second assignment of error first. In his second assignment of error, Father maintains the trial court erred in finding permanent custody was in S.H.'s best interest.

{¶21} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody

of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶22} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶23} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶24}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶25}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶26}** As set forth in our statement of the facts and case, supra, Father failed to remedy the problems which caused the removal of S.H. from the home. Father failed to successfully complete his case plan. Although he underwent drug treatment, he failed to maintain sobriety. He did not follow through with treatment for his anger issues. He completed the Goodwill parenting class, but was unable to move beyond meeting the basis needs of S.H. The stability of Father's housing was always an issue. Father was unemployed throughout the history of the case.

**{¶27}** With respect to the best interest finding, the evidence revealed S.H. has significant mental health issues, which Father is not capable of handling. S.H. needs to be in a single child home. Father's living arrangement is not such a situation.

**{¶28}** Based upon the foregoing, we find the trial court's finding an award of permanent custody was in S.H.'s best interest was not against the manifest weight of the evidence and was based upon sufficient evidence.

**{¶29}** Father's second assignment of error is overruled.

I

**{¶30}** In his first assignment of error, Father asserts the trial court abused its discretion in denying his request for an extension of temporary custody. Father contends he could earn his GED during this extension and would then be able to obtain gainful employment. We disagree.

**{¶31}** A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. See R.C. 2151.415(D)(1) and (2). *In re C.F.*, 5th Dist. No. 2013-CA-00182, 2013-Ohio-1415, para. 37. "Pursuant to R.C. 2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. See *In re McNab,* 5th Dist. Nos.2007 AP 11 0074, 2007 AP 11 0075, 2008–Ohio–1638." *Id.*

**{¶32}** We find Father has failed to demonstrate an abuse of discretion by the trial court in denying the motion for a six-month extension. As set forth more fully above, the evidence before the trial court supports the conclusion that an extension of temporary custody was not in S.H.'s best interest. Further, there is no evidence to

support Father's assertion he would his earn his GED during this time as he had failed to take any steps to do so in the year and a half the case was pending.

**{¶33}** Based on the foregoing, we find that the trial court did not abuse its discretion in denying Father's motion for six-month extension of temporary custody.

**{¶34}** Father's first assignment of error is overruled.

**{¶35}** The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur